Good morning. I'm Melanie Snyder, Chief Deputy Attorney General, here on behalf of the Colorado Bureau of Investigation. With me at council table is Russell Johnson, Assistant Solicitor General. May it please the Court. Colorado, like every other state in the federal government, requires those convicted of certain sex crimes to register with local law enforcement and then provides this limited, truthful information to the public upon request and also via CBI's website. This website doesn't include information about sex offenders who committed their offenses as juveniles, like Mr. Vega. And unlike other state registry laws, Colorado's doesn't restrict where convicted offenders may live or work. In adopting this law, the Colorado Legislature specifically provided that it is not intended to inflict punishment or retribution, but rather determined that it is necessary to allow the public to take steps to protect themselves and their children. Until the decision below, no court had found Colorado's law unconstitutional, despite the current requirements being in place for the last 15 years. Because the district court failed to follow well-established precedent of the U.S. Supreme Court and this court, its decision must be reversed. I'm going to start by discussing the jurisdictional defect under Section 1983, and then I'll turn to the Court's errors in finding that Colorado's law, as applied to the plaintiffs here, violated their Eighth and Fourteenth Amendment rights. First, the district court's order violated the jurisdictional state action requirement for Section 1983 because it granted relief based on conduct not fairly attributable to the state. For decades, the Supreme Court has made clear in cases like Blum v. Uretzky and Lugar v. Edmondson-Oyl that 1983 doesn't impose liability on states or its officials for conduct for which they cannot fairly be blamed. This court has consistently adhered to this principle in cases like Wasatch Equality v. Altus-Keyless, Gallagher v. Neil Young Freedom Concert, and Hoholev v. Chavez. Is that really what the statute does, though, or what the argument is? The argument is that by requiring the disclosure, and the purpose of the disclosure is so people can take action because they know the individual is a convicted sex offender. So all the plaintiffs were saying is that the result of this can be very deleterious to the offender. And that doesn't strike me as saying that the state is being held responsible for private action. It's just pointing out the consequences of the state action, the reasonable and expected and maybe even desired action by the state. Right. And that's certainly their argument, and no one is questioning that there are some significant consequences to being on the registry. Separately and apart, that's actually consequences that are, in effect, because of the fact of their conviction, we would submit. But even taking that into account, Section 1983 is the only vehicle for the claims in this case. And to the extent that the district court relied on the actions of private citizens, that's a troubling line to draw and to hold a state responsible for action that it can't control or even influence. You can imagine a number of situations where a negative public reaction to the government providing truthful information can go awry. We have county health departments that inspect restaurants and assess them grades. Are you going to hold the state or a governmental entity liable for what people say on Yelp? I think there's a whole host of consequences and concerns if you adopt the district court's analysis here. Any difficulties that Mr. Vega or Mr. Millard might have experienced in finding housing or maintaining employment, those are all consequences of public conduct, not actions that the state could control or even influence. Mr. Knight's ability to access his child's school, those are all policies that were in place by the school district, not anything that the state, again, could influence. It was improper for the district court to hold the state responsible for the actions of these private citizens. The order actually states, and I quote, that Colorado's law, the public has been given, commonly exercises, and has exercised against these plaintiffs, the power to inflict punishments beyond those imposed by the courts. This breathtakingly expansive attribution of private conduct to the state is simply not what Section 1983 envisions. Turning to the Eighth Amendment claim, well-established precedent requires a finding that Colorado's law is not punishment, and it certainly doesn't rise to the level of cruel and unusual punishment for purposes of the Eighth Amendment. The Supreme Court's holding 15 years ago in Smith v. Doe and the reasoning in this Court's holdings in Shaw v. Patton and Seminier v. Wan are binding precedent establishing that sex offender registries, with requirements identical to or even more burdensome than Colorado's, simply do not constitute punishment. Now the district court correctly held that Colorado's law was not intended to be punitive, and the Supreme Court tells us that only the clearest proof will override this clear legislative intent and transform a civil penalty into a criminal penalty, or a civil remedy, I should say. Rather than follow on-point precedent, the district court misapplied the Mendoza-Martinez factors in finding that Colorado's law was punitive in effect. It relied on the rationale from the dissent in Smith v. Doe and several out-of-jurisdiction cases, and also determined that Shaw wasn't binding upon it because it was an as-applied challenge. It's worth noting, however, that the most significant factor, whether there's a rational relationship to a non-punitive purpose, the district court correctly found in the state's favor. Now Colorado's registration act also isn't cruel or unusual. Far more serious and burdensome punishments have passed constitutional muster for far less serious offenses than the ones at issue here. Just last year in Kearney v. Oklahoma v. Department of Public Safety, this court held that it was not cruel or unusual punishment to require a sex offender's driver's identification. Colorado's imposition of minimal reporting requirements are not grossly disproportionate to the severity of the serious sex crimes committed here. Finally, there are no due process violations here. The district court's conclusion that Colorado's law is rationally related to a legitimate legislative objective of public protection should have ended its substantive due process analysis. Its reliance on a perceived zone of arbitrariness is contrary to binding precedent, which limits substantive due process claims to only the most egregious government conduct that shocks the conscience. The sex offenders in this case have argued on appeal for the first time that Colorado's law creates an irrebuttable presumption and that they are likely to re-offend without providing them an individualized hearing. But they've identified no fundamental right, let alone one that's deeply rooted in our nation's history or tradition, that would trigger heightened scrutiny. Numerous federal and state appellate courts have rejected claims that sex offender registries involve a fundamental right. Plaintiffs are convicted sex offenders who receive the full panoply of due process with respect to their underlying crimes. They are not entitled to any additional process before being placed on a registry that is based on their underlying criminal conviction. The district court must also be reversed with respect to its finding of a violation of Mr. Vega's procedural due process rights. Under the Rooker-Feldman Doctrine, the district court lacks subject matter jurisdiction to review perceived procedural defects in Mr. Vega's underlying deregistration petition hearings. In cases like Moe's Express v. Sopkin, this court has maintained that federal district courts may not engage in appellate review and hear claims seeking to reverse or undo a state court's order. In Mayotte v. U.S. Bank, this court reiterated that Rooker-Feldman bars a federal action that tries to modify or set aside a state court judgment simply because the proceedings shouldn't have led to that judgment. And that's precisely the case here. The district court's finding of a due process violation is a direct attack on the state court's judgments because an element of that alleged violation is that the judgments were wrongful. Even if you reach this claim, Mr. Vega received the process to which he was due. Even the district court acknowledged that Mr. Vega could have, but failed to appeal, the decisions by two separate magistrates and three separate hearings that he was provided. There was no clear error in the magistrates' findings that they didn't believe Mr. Vega had completed sex offender treatment, particularly given his continued denial of the underlying offenses. I know that he was not. Robert, didn't he complete his sentence? He did, Your Honor. Wasn't sex offender treatment required? It was required. There was no evidence. He didn't – wasn't able to present any information confirming that treatment, but neither of the magistrates – Why did he have to? Why wouldn't they have let him out if he hadn't completed it? Well, Colorado's law gives the discretion to the trial court to determine and make determinations based on the evidence that's presented. And neither of the magistrates that proceeded or presided over these hearings held it against him that he didn't have those records. They gave him the opportunity to testify, and they did. And when they asked him specific questions about the treatment, what he learned in treatment, both magistrates were very troubled. One magistrate noted that he couldn't even seem to remember how many victims he had assaulted. The other magistrate took into account a specific sex offense specific report that he had provided. She noted that she went through that report and was flagging all the different concerns. And at a certain point, she just stopped flagging she was so troubled. That's in the appendix at page 1507. So, there's nothing unreasonable about the approach that the district court – the magistrates took in those instances. If I may, I'd like to reserve the remainder of my time for rebuttal. Thank you. Good morning. My name is Ty Gee. I represent the Appalachians. And with me at council table is Adam Mueller, deputy of the court. I wanted to kind of go back to a bigger picture. We've been focusing in the briefs on very specific parts of SORA, the Sex Offender Registry Act. I think it would be quite useful for the court to have a bigger picture. Within that bigger picture, I want to focus on the substantive due process issue that we have raised. The state's premise in this appeal is that criminal history information is public information and therefore, there's nothing wrong with the state of Colorado collecting this information from a certain category of criminal defendants, publishing that information and making that information available to the public. And of course, the regime includes requiring individuals to come into the police department on their birthdays or in the case of Mr. Millard, four years of age, to come into the police department on their birthdays. So there's a lot of substantive information that the public otherwise would not have. We're not talking about criminal history information. We're talking about fingerprints, photographs, the home address. Now, I would like to return just briefly to the birth of the sex offender registry idea. It stands against a select group. There is an attempt by the state of Colorado to analyze this problem created by SORNA in discrete parts. It cannot be done. You'll miss the constitutional problem, judges. At the birth of the Sex Offender Registration Act, here's what we had. We had a criminal justice system that arrested, prosecuted, convicted, and then imposed a sentence upon an individual. That individual would complete his sentence and then be a free man, free to walk about and in some states to recover some of the civil rights that were lost, including the right to vote. The really pernicious idea underlying the Sex Offender Registration Act is that we will radically change the landscape of the criminal justice system so that now, not only do we arrest, prosecute, impose a sentence and require that person to complete the sentence, but the sentence has a tail. The sentence requires that the state of Colorado have, in effect, continuing jurisdiction over an individual. How else do you require a free man who has completed his term of imprisonment, his term of sentence, including all parole, all probation, to come in, in Mr. Millard's case, for the police department in order to supply information that no other person has a right to request? And the only reason that the government has the right to request that and to demand your appearance at the police department four times a year for the rest of your life? So the gist of your argument, of your position, is he's continuing to be punished. That's right, Your Honor. So the way we analyze that is under the Eighth Amendment, isn't that correct? I think that the Eighth Amendment is one way to analyze it. I think that there also is a way to analyze this under the substantive due process. Well, the Supreme Court's been pretty clear that when there's a constitutional provision that covers the matter, we look to that specific provision rather than turning to substantive due process. You agree with that? Yes, I do. So why is that not applicable here? Well, I would apply both analysis, and we have in our opening brief, and I'm happy to talk about the cruel and unusual punishments clause as well. Is there any reason to go beyond, is there any excuse for going beyond the framework of cruel and unusual punishment analysis and also going to substantive due process? I think doing that would be contrary to Supreme Court guidance on how to apply the substantive due process clause, but if you have an argument to the contrary, I'd like to hear it. Well, yes, Your Honor. As we suggest in our papers, there is a reason to go to both constitutional provisions. And the reason we would advance for going to the due process clause in addition to the Eighth Amendment is that we have different interests at stake in these two constitutional provisions. The substantive due process clause in this as-applied case certainly addresses issues that the cruel and unusual punishments clause does not. And in particular, I'm referring to the rights that Judge Maitch and we have identified in our papers. The right to But that's why I was interested in how you framed the issue, and you spoke for four minutes. I asked you, you're saying this is punishment. That seems the heart of the matter. And if your problem is with the punishment, the Eighth Amendment clearly governs that issue. Well, yes, Judge Hartz, I agree with you that punishment can, is certainly at issue in this case. But I don't see that as being a matter that excludes the possibility of other rights being infringed that are vindicated by the due process clause. Let's turn to the Eighth Amendment. Sure. Under the Mendoza-Martinez factors, you agree that those are what govern for your Eighth Amendment claim. Is that correct? I think that those are the best that we have available. We don't have a specific Eighth Amendment case before the Supreme Court or this Court either. But this happens to be the way that all the ex post facto cases have gone. So I don't have another framework for it, Your Honor. And we've applied those factors to very similar statutes. In fact, statutes that aren't as don't apply as severe constraints on the prior offender as the Colorado statute. Isn't that correct? Yes, that's right. So how do you distinguish those cases? Well, I would distinguish those cases because this is an as-applied case, as applied to these individuals. The cases the Court is referring to, for example, Thelma Darren Shaw, do involve a different statute. And I don't think it's fair in an as-applied case, the one before the Court today, to look back at the other cases because the facts in this case are different. Just as an example, Mr. Millard. Mr. Millard is being required under the Colorado statute under registry statute to come in four times a year at the coercion of the government under this law in order to provide information to the government for it to publicize to the world that nowhere else is he required to provide. For sure that's punishment. It also is a violation of the federal law. And that's something that fits, if you'll indulge me, Judge Hartz, both the Fifth Amendment and the Eighth Amendment. But sure, I think that that is a problem with the sex offender registration law. You do not have in Shaw or Femidaire the facts of Mr. Millard. Mr. Millard, who is being charged, who is, well, for example, there is this discussion about in the government's brief about how we are still able, these sex offenders are still able to pursue a vocation or an application. And to me that really misses the point. We have gotten to the point with these sex offender registration laws that, and this is the whole point of the sex offender registration laws, that you have in name, in appearance, the right to pursue a vocation. But as Mr. Millard testified, it is the most fragile kind of right that he now has to pursue a vocation. The Sex Offender Registration Act, as Mr. Millard suggests, is one where he has moved from a point in which he is dealing with the law enforcement agencies, for example, the prisons, and after he has been released, he has returned to a community that polices at large, where the government has essentially deputized every member of the community to watch you, follow you, and as appropriate, and as you suggested in your first question, Judge Hartz, to take action against him. And when the state of Colorado passes this law, it is not that the state has no idea what the effect will have on this villainized group of individuals. They know exactly what is going to happen. They have deputized the public to watch them, and they have given the resources to the public to observe, and to constrain, and to act as deputized officers, and that is what they do. You listen to Mr. Millard's testimony, and why is it that he fears, every day, coming into work and losing his job, his means of livelihood? It is because any customer who walks into Albertson's is a potential police informant. Isn't this justified by protection of the public safety? Well, I think this is the point that is so compellingly made by the 17 professors in their amici brief. It isn't justified by this idea of protecting the public. And I think we make this point in our brief that you have 19,000 individuals on this registry. It is unrealistic to believe that this somehow protects the public when you have to essentially be online 24 hours a day or as you're jogging down the street. Is there any evidence in this record about the effectiveness of this act as a deterrence to re-offending? Yes. Mr. Rankin himself testified that one of the purposes of the Sex Offender Registry Act was to deter. I realize that, but is there any evidence of the extent to which it deters? I think the evidence... Evidence as to how many child sex offenders re-offend? Right. I think that the information regarding that is in the authority cited by the 17 professors in their amici brief. In fact, it has almost no success. It has no rational relationship to the idea behind the Sex Offender Registration Act. That's not answering my question. Is there any evidence about the deterrent effect in Colorado? Is there any evidence that there are re-offenders or not re-offenders? Is there any evidence about how well deterrence works? Because deterrence has to be one of the major reasons for this act. Right. There is not evidence except for the testimony of these individuals, our clients, the three appellees, who all testified, corroborated by other evidence as well, that despite their many years on the Sex Offender Registry, they haven't committed any sex offenses, and not only that, they haven't committed any other offenses as well. Can we overturn this act without some evidence that goes beyond three people? What we would ask is that the court declare or affirm Judge Mages' decision to declare unconstitutional, as applied to these appellees, the Sex Offender Registration Act. I wanted to say in my last 15 seconds that Judge Hart said, I hope that the court will not completely dispense with the substantive due process argument when the court considers the Sex Offender Registration Act's consequences to Mr. Millard. I'd like to talk about the bigger picture as well, and the bigger picture here is that Colorado, just like every other state in the federal government, has this law on its books. It's not that the state of Colorado has gone rogue here. Every single legislature in Congress has determined that there is an important and legitimate public safety and protection interest at stake here, and they've adopted a law in order to protect the public as such. I agree, Judge Hart, that the Eighth Amendment analysis should control here. Smith v. Doe tells us that the mere dissemination of truthful information in furtherance of a government objective that's legitimate is just not punishment under our Constitution. Because the Eighth Amendment controls, there's really no need to search out and find new fundamental rights under a substantive due process theory. But even if you do that, there is no fundamental right at stake here, and really, this is rational basis for view. There's a clear rational basis here, and even the district court acknowledged that. There's simply no right to keep your criminal convictions secret from the public, and while we don't dispute that there are some concerns that the public may have in knowing this information, that's information that's already publicly available, and our system convictions are public information, and the U.S. Supreme Court has acknowledged that much of the stigma that occurs here is not as a result of being put on a registry. It's as a result of being convicted of very serious crimes, and it's certainly within a legislature's purview to determine that someone like Mr. Millard, who pled guilty to sexually assaulting with penetration of his 18-year-old daughter, that he should remain on a registry for the rest of his life. There's nothing cruel or unusual about that. It's perfectly rational for the state legislature to decide that the public would want to be able to seek out information about people that may be in their communities. A mother who may have a student at Mr. Knight's school where he is going to drop off his children, she might want to know that he submitted an Alfred plea with respect to his attempt at putting his finger into his 4-year-old niece's vagina. She might decide that I don't want to have that person be in carpool with me, or I may want to think about whether I want to have a play date or have my kids have a play date at that house. So there's nothing unreasonable about that public protection purpose. Now, we would certainly... Well, while you're trying to justify the statute, the issue before us is not whether this is good public policy or not. Correct. It's whether it violates the Constitution. Correct. So don't expect us to comment on whether this is a good statute or not. Of course not, and that's certainly not this Court's role under rational basis review. We would certainly take issue with the idea that the state has deputized the public. That's absolutely not what has not occurred here. The CBI website, before you click through and can do a search, you have to read specific information, and that includes warnings and prohibitions saying that the information that's being provided shouldn't be used for an unlawful purpose. It warns people that they could be subject to arrest or prosecution if they misuse that information to harass someone, assault someone, vandalize their property. So we definitely take issue with the idea that the state of Colorado is trying to deputize private citizens to go out and shun or somehow punish these members of the public. I would submit that this case doesn't present any specific facts. There's nothing special about Colorado's law or the facts in this case that would really justify this Court departing from the clearly established precedent, both under the U.S. Supreme Court precedent as well as this Court's precedent. If there are no further questions, we would ask that Colorado's – you recognize that Colorado's law is a civil, non-punitive regulatory scheme that's rationally related to the state's interest in public protection and safety. We ask that you reverse the district court and hold that the state is not liable for private conduct and that Colorado's law doesn't violate the Eighth or Fourteenth Amendments. Thank you. Thank you, counsel.